# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

JOY WALKER SLOCUM                                    CIVIL ACTION

VERSUS                                               NO. 12-1915

ARMAND DEVEZIN, et al.                               SECTION: "G"(5)

## ORDER AND REASONS

Before the Court is Defendants Armand Devezin, Rosalynne Dennis, Darryl Kilbert, and Charlotte Matthew's (collectively, "Defendants") Motion for Dismissal,[1] wherein Defendants seek the dismissal of Plaintiff Joy Walker Slocum's ("Plaintiff") claims with prejudice. After considering the complaint, the pending motion, the memorandum in support, the opposition, the reply, the record, and the applicable law, the Court will grant the pending motion and dismiss Plaintiff's federal claims for religious discrimination with prejudice; and further, the Court declines to exercise supplemental jurisdiction over any of Plaintiff's potential state law claims, and thus will dismiss those claims without prejudice.

## I.  Background

### A.  Factual Background

In August of 2008, Plaintiff was hired by the Orleans Parish School Board, and in September of 2011 she was assigned as a special education teacher at Ben Franklin Elementary School.[2] Sometime between August 29, 2011 and September 2, 2011, Plaintiff spoke with her principal, Charlotte Matthew ("Matthew") regarding her desire to observe her religious Sabbath from 10:00

---

[1]  Rec. Doc. 8.

[2]  EEOC charge, Rec. Doc. 1-2 at p. 5.

a.m. on Tuesday until 10:00 a.m. on Wednesday each week.[3]  Plaintiff was absent from teaching on September 6, September 13, September 20, and September 27 of 2011 to either consult with her spiritual advisor or observe her Sabbath.[4] Plaintiff claims to have submitted a written request for a reasonable accommodation for her religious observance to her principal, Matthew, on September 19, 2011.  Plaintiff alleges that her request was granted on September 20, 2011 and September 27, 2011.[5] However, on September 30, 2011, after a number of conversations and email correspondence, Plaintiff received a letter from the Executive Director of Human Resources, Armand Devezin ("Devezin"), denying her request for time off each week.[6] On October 3, 2011, she also received a letter from the Superintendent, Darryl Kilbert ("Kilbert"), although Plaintiff claims the letter "never addresse[d] [her] Civil Rights for [her] religious practices as far as approving or disapproving [her] request."[7]

### B.  Procedural Background

On October 13, 2011, Plaintiff filed a Charge of Discrimination ("EEOC charge") with the Equal Employment Opportunity Commission ("EEOC") against the Orleans Parish School Board.[8] After receiving a "right to sue" notice from the EEOC dated June 19, 2012, Plaintiff filed a complaint in the Eastern District of Louisiana on July 24, 2012, which alleged religious discrimination by Defendants in violation of Title VII of the Civil Rights Act of 1964 but did not

---

[3]  *Id.* at pp. 1, 5

[4]  Rec. Doc. 1-2 at pp. 1-4.

[5]  Rec. Doc. 1-2 at p. 5.

[6]  *Id.*

[7]  *Id.* at p. 3.

[8]  Rec. Doc. 1-2 at p. 5.

name the Orleans Parish School Board as a defendant.[9] In the Complaint, Plaintiff seeks: (1) a court order permitting Plaintiff to take off from work each week for her "Religious Sabbath period;" (2) "financial retribution for mental anguish of $50,000, since [she] was forced to go against [her] religious convictions;" (3) "to be free from any retaliation from [her] employer as a result of filing this case;" and (4) that her "children are free of any repercussions as a result of this case, since they are enrolled in schools governed by Orleans Parish School Board."[10] On September 10, 2012, Defendants filed the instant motion to dismiss.[11] On October 4, 2012, Plaintiff requested additional time to respond to the pending motion, and the Court granted this request.[12] After receiving an extension of time to respond, Plaintiff filed an opposition on November 29, 2012.[13] On May 9, 2013, Defendants filed a reply.[14]

## II.  Parties' Arguments

Defendants' move the Court for dismissal of all of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6), claiming that Plaintiff's complaint "does not allege sufficient facts to overcome Defendants' qualified immunity under federal and state law jurisprudence, and does not contain sufficient facts to state a cause of action for employment-related emotional distress."[15] Defendants contend that "[q]ualified immunity shields federal and state officials from money

---

[9]  Rec. Doc. 1.

[10]  Rec. Doc. 1 at p. 2.

[11]  Rec. Doc. 8.

[12]  Rec. Doc. 9; Rec. Doc. 10.

[13]  Rec. Doc. 16.

[14]  Rec. Doc. 32.

[15]  Rec. Doc. 8-1 at p. 5.

damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[16] However, Defendants suggest that "[t]he court need never decide whether the plaintiff's claim . . . in fact has merit," because Plaintiff bears the burden to first show that the right allegedly violated was "clearly established" at the time of the alleged violation.[17]

Defendants argue that their conduct, as alleged in the Complaint, was objectively reasonable because "Defendants' denial of plaintiff's request to not work on Tuesdays and report for work late every Wednesday are supported by and consistent with the U.S. Supreme Court, Fifth Circuit, and Eastern District of Louisiana decisions on employee requests for leave to observe the Sabbath."[18] First, Defendants rely on the Supreme Court's decision in *Ansonia Board of Education v. Philbrook*,[19] to claim that a school board is not required to accommodate a teacher's request to miss six school days per year to attend a religious holiday celebration, even where the teacher offered to pay the cost of a substitute,[20] because such an accommodation is an "undue hardship" and would "result[] in more than a *de minimus* cost to the employer."[21] Defendants also rely on the Supreme Court's decision in *Trans World Airlines, Inc. v. Hardison,*[22] where "an airline was not required to accommodate an employee whose religious beliefs prohibited the employee from working on

---

[16]   *Id.* at p. 6 (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011)).

[17]   *Id.* at pp. 7-8.

[18]   *Id.* at pp. 8.

[19]   479 U.S. 60 (1986).

[20]   Rec. Doc. 8-1 at pp. 8-9.

[21]   *Id.* (citing *Ansonia*, 479 U.S. at 67).

[22]   432 U.S. 63 (1977).

4

Saturdays, where the employee worked in a maintenance shop that operated 24 hours a day, seven days a week."[23] According to Defendants, the Supreme Court reasoned that it would be anomalous to conclude that "reasonable accommodation" required an employer to "deny the shift and job preferences of some employees, as well as deprive them of their contractual rights, in order to accommodate or prefer the religious needs of others, and [the Court] conclude[d] that Title VII does not require an employer to go that far."[24] Defendants also rely on two Fifth Circuit cases, *Eversley v. Mbank Dallas*[25] and *Brener v. Diagnostic Center Hospital*,[26] where the employers were found to be subject to an "undue hardship" if an employee took time off from work every week to observe their Sabbaths.[27] Therefore, Defendants contend that the potential impact of Plaintiff's requested weekly absences on the students in her special education classes imposes an undue hardship, and Defendants note that courts have found such considerations appropriate.[28] As such, Defendants aver that they "are entitled to dismissal based on qualified immunity, because their decisions were consistent with U.S. Supreme Court, Fifth Circuit and Louisiana cases holding that Sabbath leaves during scheduled working hours impose an undue burden on schools and other employees."[29]

Next, Defendants interpret *pro se* Plaintiff's request for "financial retribution for mental anguish of $50,000 since I was forced to go against my religious convictions," as a claim for

---

[23] Rec. Doc. 8-1 at p. 9.

[24] *Id.* (quoting *Hardison*, 432 U.S. at 81) (internal quotations omitted).

[25] 843 F.2d 172 (5th Cir. 1988).

[26] 671 F.2d 141 (5th Cir. 1982).

[27] Rec. Doc. 8-1 at p. 10.

[28] *Id.* at pp. 11-12.

[29] *Id.* at p. 12.

intentional infliction of emotional distress, and contend that Plaintiff has failed to allege sufficient facts to state such a claim.[30] Defendants claim that this Court should apply Louisiana law to determine if Plaintiff has stated a claim for emotional distress.[31] According to Defendants, to state a cause of action for intentional infliction of emotional distress, Plaintiff must allege facts establishing: "(1) that the conduct of the defendant was extreme and outrageous, (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct."[32] Defendants aver that the complaint and its attachments do not allege any specific facts to support that: "1) defendants' conduct was extreme and outrageous; 2) that Ms. Slocum suffered severe emotional distress; or 3) that defendants knew or should have known that their conduct would result in Ms. Slocum suffering emotional distress."[33] Therefore, Defendants request dismissal of any Louisiana law monetary damages claims for mental anguish contained in the complaint.[34]

Finally, Defendants argue that they have qualified immunity from "tort liability for any state law claims pursuant to La. R.S. 17:1439.A,"[35] because the Complaint contains no allegations that

---

[30]  *Id.* at p. 13.

[31]  *Id.* (citing *La Day v. Catalyst Technology, Inc.*, 302 F.3d 474, 483 (5th Cir. 2002)).

[32]  *Id.* (quoting *Baker v. LSU Health Sciences Center*, 39,200 (La. App. 2 Cir. 12/15/04); 889 So. 2d 1178, 1183).

[33]  *Id.* at p. 14.

[34]  *Id.*

[35]  *Id.*

"Defendants' statements, acts, or omissions were not within the course and scope of their duties or was outside of [Orleans Parish School Board] guidelines."[36]

In opposition to the pending motion, and after receiving an extension of time to respond, Plaintiff requests that her case "not be dismissed because [her] supervisors have discriminated against [her] in violation of Title VII Of The Civil Rights Act of 1964, as amended in regard to religious discrimination," and requests "the opportunity to plead [her] case before [the Court]."[37] This is the entirety of her response to the pending motion.

In reply, Defendants contend that Plaintiff has still failed to demonstrate that Defendants "acted contrary to clearly established law in denying Ms. Slocum's request to be absent from her position as a special education teacher on Tuesdays and Wednesday mornings every week."[38] Defendants note that Plaintiff's opposition provides "no additional factual allegations regarding defendants' conduct, contain[s] no new legal argument and cite[s] no law contrary to the many U.S. Supreme Court, Fifth Circuit, and Eastern District cases that support defendants' qualified immunity."[39]

Further, Defendants argue that under Fifth Circuit precedent, when defendants invoke qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense, and that adjudication of qualified immunity claims should occur at the earliest possible stage in litigation.[40] Moreover, Defendants claim that this Court has "'not only the authority to dismiss a

---

[36]  *Id.* (citing *Credit v. Richland Parish Sch. Bd.*, 2011-1003 (La. 3/13/12); 85 So. 3d 669, 679-80).

[37]  Rec. Doc. 16.

[38]  Rec. Doc. 32 at p. 1.

[39]  *Id.*

[40]  *Id.* at p. 2 (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)).

claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"[41]

## III.  Law and Analysis

### A.  Standard on a Motion to Dismiss

The Federal Rules of Civil Procedure provide that an action may be dismissed "for failure to state a claim upon which relief can be granted."[42] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[43] "Factual allegations must be enough to raise a right to relief above the speculative level,"[44] and a claim is facially plausible when the plaintiff has pled facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[45]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[46]  However, although required to accept all "well-pleaded facts" as true, the court is not required to accept legal conclusions as true.[47]  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[48]  Similarly,

---

[41]  *Id.* (quoting *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995) (en banc)).

[42]  Fed. R. Civ. P. 12(b)(6).

[43]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[44]  *Twombly*, 550 U.S. at 556.

[45]  *Id.* at 570.

[46]  *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007).

[47]  *Iqbal*, 556 U.S. 662, 677-78.

[48]  *Id.* at 679.

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[49] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[50] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[51] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[52] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[53]

### B. Standard Applicable to Pro Se Filings

In addition to the applicable standard on a motion to dismiss, the Court is also cognizant that Plaintiff is proceeding *pro se*, and is therefore entitled to certain limited considerations. *Pro se* plaintiffs often lack the legal training helpful in interpreting and applying the substantive and procedural requirements of the legal system. Therefore, the Fifth Circuit has held that "[w]e give *pro se* briefs a liberal construction."[54] "This does not mean, however, that a court 'will invent, out of whole cloth, novel arguments on behalf of a *pro se* plaintiff in the absence of meaningful, albeit

---

[49]   *Id.* at 678.

[50]   *Id.*

[51]   *Id.*

[52]   *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[53]   *Moore v. Metropolitan Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, C.J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5th Cir. 2007)).

[54]   *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012) (citing *Mayfield v. Tex. Dep't of Criminal Justice*, 529 F.3d 599, 604 (5th Cir. 2008)); *Perez v. United States*, 312 F.3d 191, 194-95 (5th Cir. 2002).

imperfect, briefing.'"[55] Moreover, "[e]ven under the rule of liberal construction, 'mere conclusory allegations on a critical issue are insufficient.'"[56] *Pro se* plaintiffs are otherwise required to know their legal rights and abide by all applicable procedural rules,[57] and a *pro se* plaintiff's ignorance of or unfamiliarity with court proceedings does not relieve her of this duty.[58]

## C. Federal Claims

Defendants contend that Plaintiff fails to state a claim upon which relief may be granted for her claim of religious discrimination under Title VII of the Civil Rights Act of 1964 because (1) they are entitled to qualified immunity; and (2) because Plaintiff's complaint, even with all allegations taken as true, does not state a claim for relief that is plausible on its face, considering controlling precedent on this issue.

Title VII makes it unlawful for an employer to discriminate against an employee on the basis of religion.[59] "An employer has the statutory obligation to make reasonable accommodations for the religious observances of its employees, but is not required to incur undue hardship."[60] "Undue hardship" exists, "as a matter of law, when an employer is required to bear more than a *de minimus* cost."[61]

---

[55] *Jackson v. State Farm Fire & Cas. Co.*, No. 06-7202, 2010 WL 724108, *2 (E.D. La. Feb. 22, 2010) (Vance, C.J.) (quoting *Jones v. Alfred*, 353 F. App'x 949 (5th Cir. 2009)).

[56] *Smart v. U.S. Dept. of Veteran Affairs*, 759 F.Supp. 28 867, 870 (W.D. Tex. 2010) (quoting *United States v. Woods*, 870 F.2d 285, 288 n. 3 (5th Cir. 1989)).

[57] *Washington v. Jackson State Univ.*, 532 F. Supp. 2d 804, 809 (S.D. Miss. 2006) (citing *Boswell v. Gov. of Texas*, 138 F.Supp.2d 782, 785 (N.D. Tex. 2000)).

[58] *See Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir. 1991).

[59] *Weber v. Roadway Exp., Inc.*, 199 F.3d 270, 272-73 (5th Cir. 2000) (citing 42 U.S.C. § 2000e-2(a)(1)).

[60] *Id.*

[61] *Id.* at 273.

1. *Prima Facie* Case of Religious Discrimination

An employee makes a *prima facie* case of religious discrimination by proving "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement."[62] Once a plaintiff establishes a *prima facie* case of religious discrimination "the burden shifts to the employer to show that it was unable reasonably to accommodate the plaintiff's religious needs without undue hardship."[63]

Here, Defendants do not challenge the sincerity of Plaintiff's religious convictions or that part of her religion – her Sabbath – conflicts with her employer's requirement that she work on Tuesdays. Moreover, it is not disputed that Plaintiff notified her employer of this belief. In fact, Defendants do not allege that Plaintiff does not state a *prima facie* case. The Court notes, however, that Plaintiff has not alleged that she was terminated from her employment, or that she was disciplined in any way other than being denied her request to take off every Tuesday for her Sabbath. As this is a motion to dismiss, the Court will construe Defendants' denial of Plaintiff's request to take off for her Sabbath as being a form of discipline "for failure to comply with [a] conflicting employment requirement."[64] Therefore, for the purposes of a motion to dismiss, the Court will read the complaint in the light most favorable to Plaintiff, and find that Plaintiff has made a *prima facie* case of religious discrimination.

2. "Undue Hardship"

---

[62] *Turpen v. Missouri-Kan-Tex R. Co.*, 736 F.2d 1022, 1026 (5th Cir. 1984).

[63] *Id.*

[64] *Id.*

11

Assuming for the purposes of the pending motion to dismiss that a *prima facie* case is established, the burden shifts to Defendants to show that it was unable to reasonably accommodate Plaintiff's religious needs without undue hardship.[65] In *Hardison*, cited by Defendants, the Supreme Court held that employers did not violate Title VII of the Civil Rights Act of 1964 by refusing an employee's request to take off from sunset Friday until sunset on Saturday in observance of the employee's Sabbath, because it would constitute an "undue burden" on the employer.[66] The Supreme Court noted that weekend work was necessary for the employer's business, and that weekend work had been determined by a collective bargaining agreement that gave preference based on seniority; the plaintiff-employee had no volunteers to relieve him of Saturday shifts, and forcing other employees to take this shift simply because they did not share the plaintiff's religion would have amounted to unequal treatment that was not contemplated by Title VII:

> [T]o require TWA to bear additional costs when no such costs are incurred to give other employees the days off that they want would involve unequal treatment of employees on the basis of their religion. By suggesting that TWA should incur certain costs in order to give Hardison Saturdays off the Court of Appeals would in effect require TWA to finance an additional Saturday off and then to choose the employee who will enjoy it on the basis of his religious beliefs. While incurring extra costs to secure a replacement for Hardison might remove the necessity of compelling another employee to work involuntarily in Hardison's place, it would not change the fact that the privilege of having Saturdays off would be allocated according to religious beliefs.[67]

The Supreme Court further stated that "we will not readily construe the statute to require an employer to discriminate against some employees in order to enable others to observe the Saturday

---

[65] *Id.*

[66] 432 U.S. at 80-81

[67] *Id.*

Sabbath."[68]

In *Eversley*, also relied upon by Defendants, the Fifth Circuit followed *Hardison*, and affirmed a district court's grant of summary judgment dismissing the plaintiff's claims for religious discrimination.[69] There, the plaintiff's religion required he take off for his Sabbath from sundown Friday to sundown on Saturday.[70] The Fifth Circuit acknowledged that short of incurring an undue burden, employers had a statutory obligation to make reasonable accommodations for religious observances.[71] Like the *Hardison* court, the Fifth Circuit found that granting the plaintiff's request would cause the defendant to incur a more than *de minimus* hardship.[72] The Fifth Circuit acknowledged that unlike in *Hardison*, weekend work was not governed by seniority or a collective bargaining agreement, but nonetheless held that forcing employees to switch shifts with the plaintiff after they refused, so that plaintiff could celebrate his Sabbath, would be unfair and would "upset" those employees.[73] Therefore, the Fifth Circuit held that "it is unreasonable and an undue hardship on an employer to require the employer to force employees, over their express refusal, to permanently switch from a daytime to a night time shift in order to accommodate another employee's different Sabbath observation."[74]

Here, Plaintiff teaches special education at an elementary school. Class is held from Monday

---

[68] *Id.* at 84-85.

[69] 843 F.2d at 172.

[70] *Id.* at 174.

[71] *Id.* at 175.

[72] *Id.*

[73] *Id.* at 175-76.

[74] *Id.* at 176.

through Friday. Accommodating Plaintiff's request to take off every Tuesday would require Defendants to hire a substitute teacher every week, or a part-time employee to cover every Tuesday, in addition to paying Plaintiff's salary, or perhaps would require her students to sit with another teacher's class – overloading the student-teacher ratio. Such accommodations appear even more burdensome than those contemplated in *Hardison* or *Eversley*.[75] Therefore, this Court finds that obliging Plaintiff's request and accommodating her religious practices in this regard would require Defendants to bear more than a *de minimus* cost, and as such would be an "undue hardship."[76] Accordingly, on the face of Plaintiff's complaint, and accepting all of her allegations as true, Plaintiff cannot establish that Defendants were in violation of Title VII of the Civil Rights Act of 1964 by denying Plaintiff her request for time off every Tuesday for her Sabbath, and Plaintiff's claims for religious discrimination will be dismissed with prejudice. This conclusion obviates the need for the Court to address Defendants' defense of qualified immunity.

In addition to seeking monetary relief and an order that she is permitted to take off for her Sabbath each week, Plaintiff has requested additional injunctive relief. Specifically, Plaintiff asks "to be free from any retaliation from [her] employer as a result of filing this case;" and that her "children [be] free of any repercussions as a result of this case, since they are enrolled in schools governed by Orleans Parish School Board."[77] As Plaintiff has made no allegations which would

---

[75] *See also Favero v. Huntsville Indep Sch. Dist.*, 939 F. Supp. 1281 (S.D. Tex. 1996) (holding that a school bus driver's request to not work Friday afternoons to observe his Sabbath would impose an undue burden on the school district).

[76] *See Weber*, 199 F.3d at 273.

[77]  Rec. Doc. 1 at p. 2.

constitute actionable retaliation, such claims are not yet ripe, or otherwise she has failed to state a claim upon which relief can be granted.[78]

**D. State Law Claims**

Defendants also request the dismissal of any state law claim against them, stating that Plaintiff, who is proceeding *pro se*, attempts to bring a cause of action for intentional infliction of emotional distress ("IIED") under Louisiana law. Defendants claim dismissal of this cause of action is warranted because Plaintiff fails to meet her pleading requirements and because they have qualified immunity. Plaintiff's pleadings do not clarify what claim she seeks relief under, nor do they respond to Defendants' legal arguments.

Section 1367(c)(3) specifically grants district court's the discretion to retain or decline supplemental jurisdiction once it has dismissed all claims over which it has original jurisdiction, such as Plaintiff's claim under Title VII.[79] While this Court has the authority and discretion to hear Plaintiff's potential state law claims, the United States Supreme Court's decision in *United Mine Workers of America v. Gibbs*,[80] instructs that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as

---

[78] *See New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 587 (5 th Cir. 1987) ("[A] case is not ripe if further factual development is required.")

[79] *See Cudd Pressure Control Inc. v. Roles*, 328 F. App'x 961, 966 n. 2 (5th Cir. 2009)

[80] 383 U.S. 715 (1966).

well."[81] Therefore, this Court will dismiss without prejudice any state law claims Plaintiff may have arising from this complaint so that she may refile these claims in the appropriate state court.[82]

### IV. Conclusion

For the reasons stated above, Plaintiff has failed to make allegations to sustain a cause of action for religious discrimination under Title VII of the Civil Rights Act of 1964, because there is no reasonable accommodation Defendants' could afford Plaintiff that would not subject them to an undue hardship. As all Plaintiff's federal claims have been dismissed, the Court will exercise its discretion under 28 U.S.C. § 1367(c)(3), and will dismiss any related state law claims, such as a claim for IIED, without prejudice, so that they may be filed in the appropriate state court. Accordingly,

**IT IS HEREBY ORDERED** that Defendants Motion for Dismissal[83] is **GRANTED** and Plaintiff's claims for religious discrimination under Title VII of the Civil Rights Act of 1964 are **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that Plaintiff's requests  "to be free from any retaliation from [her] employer as a result of filing this case;" and for her "children [to be] free of any repercussions as a result of this case, since they are enrolled in schools governed by Orleans Parish School Board," are **DISMISSED**, as they are not ripe at this time and therefore Plaintiff has failed to state a claim upon which relief can be granted;

---

[81] *Id.* at 726.

[82] *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999) ("When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims. However, the dismissal of the pendent claims should expressly be without prejudice so that the plaintiff may refile his claims in the appropriate state court.") (internal citation omitted).

[83] Rec. Doc. 8.

**IT IS FURTHER ORDERED** that any related state law claims, whether expressly plead in the complaint or not, are **DISMISSED WITHOUT PREJUDICE**, so that Plaintiff may refile such claims in the appropriate state court.

**NEW ORLEANS, LOUISIANA**, this  3rd  day of June, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

17